# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                       **NO:  13-198**

**YOLANDA SMITH**                                **SECTION: "S" (5)**

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Yolanda Smith's Rule 29 Motion for a Judgment of Acquittal as to Count 1 (Doc. #289) is **DENIED**.

## BACKGROUND

This matter is before the court on a Rule 29 Motion for Judgment of Acquittal as to Count 1 filed by defendant, Yolanda Smith.  On January 22, 2015, a jury found Smith guilt as charged in a three-count Superseding Indictment.[1]  Specifically, Smith was convicted of: conspiracy to import methylone in violation of 21 U.S.C. § 963 (Count 1); conspiracy to possess with intent to distribute methylone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), all in violation of 21 U.S.C. § 846 (Count 2); and, possession of methylone with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Smith argues that the evidence at trial was insufficient to find her guilty beyond a reasonable doubt of Count 1, conspiring to import metyhlone.

In May 2013, Isaac Novoa, a Customs and Border Protection ("CBP") officer working at the San Francisco International Airport intercepted four packages from China bound for the New Orleans, Louisiana area.  Upon inspection, CBP officers discovered that the packages all contained methylone, a Schedule I controlled substance.  Novoa sent the packages via United States Postal

---

[1] Smith's trial was conducted before Judge Helen G. Berrigan.  On January 6, 2016, this matter was temporarily realloted to Judge Mary Ann Vial Lemmon due to Judge Berrigan's leave of absence.

Service ("USPS") to Homeland Security Investigations ("HSI") in New Orleans for controlled deliveries.

On May 6, 2013, law enforcement officers made controlled deliveries of three of the packages one each to Alvin Phillips, Wykeshia Gray and Eric Johnson and his wife, Tyrnicka Hawkins. All four of them were arrested. Johnson and Gray both testified at Smith's trial that they did not know Smith. Johnson testified that he and Hawkins were recruited by Phillips to receive packages at their address in exchange for money and/or drugs, that Phillips did not tell him that the packages contained cancer medicine, and he knew something illegal was in the packages because nobody would pay a person to receive something legal in the mail. Gray testified that Johnson brought her in by asking her to receive packages of cell phones for payment. She testified that she did not believe that the packages contained cell phones, and by the time she received the second package, she knew that the packages contained methylone.

On May 30, 2013, law enforcement officers made a controlled delivery of the fourth package to Smith's residence. The package was addressed to Alan Phillips[2] at Smith's residence and clearly had Chinese characters on it. Smith signed for the package using the name Patrice Phillips. Law enforcement officers observed Smith place the package, which was concealed in a silver gift bag, into her shed. When the officers executed the search warrant Smith, told them that some white guy came into her back yard and put a package in the shed. Smith was arrested. After she was read the Miranda warning and signed a waiver or rights, she told law enforcement officers that Phillips had

---

[2]   "Alan Phillips" was an alias that "Alvin Phillips" was using in connection with the packages.

offered her and her husband $250 to $500 per package to receive packages at their house, and that the packages contained medicine.

At Smith's trial, Phillips testified that Smith and her husband, Jessie Smith, knew that he had cancer, but that he had beaten it.  Phillips also testified that in December 2012 he lent the Smiths $200 to help pay their electric bill.  Around the same time, the Smiths moved to Waggaman, Louisiana, and Jessie asked Phillips if he know anybody who was hiring in construction work. Phillips asked two contractors, and they said that they may be hiring after Mardi Gras.  Phillips told Jessie and Yolanda Smith that there was no work, but Phillips needed addresses to have packages of methylone delivered and if the Smiths agreed to let Phillips use their address, they would receive $500 per month or "molly" pills or half money and half pills.  Phillips testified that this conversation occurred in the Smith's kitchen, with both Yolanda and Jessie present, and he made it clear that the packages would contain methylone.  Phillips testified that the Smiths agreed to let him use their address to have packages delivered and he had no doubt that they knew the packages contained methylone. Phillips also testified that he never ordered or paid for the drugs from China, but rather he provided addresses for the people who were doing those things, and he would bring them the packages and bring the money to the people who allowed their addresses to be used.

Smith testified in her own defense.  She testified that she knew Phillips had cancer, but did not know that he had beaten it.  Smith also testified that her husband told her that Phillips wanted to use their address to get his cancer medicine.  She did not find it strange because Phillips told her husband that someone was stealing the medicine.  Smith testified that there was no discussion of Phillips paying them to receive the packages.

Smith testified that on May 30, 2013, she signed for the package using the name Patrice Phillips because she thought she "couldn't get his medicine if [she] signed [her] own name" because she "thought [she] couldn't get his medicine without being part of his family."  Smith testified that she did not know that the package contained methylone.  She said that she put it in the shed so that her children would not find it and mistake it for candy.  Smith denied telling the law enforcement officers that a white man put a package in her shed.  She also testified that the law enforcement officers gave her the information about Phillips' paying people to receive packages, and that is why she said it in her May 30, 2013, statement.

Jessie Smith testified that in February 2013, while at a bar, Phillips asked him if he would receive Phillips' cancer medicine at his house because someone was stealing it when it was delivered.  Jessie did this favor for Phillips because Phillips paid his electric bill.  Jessie testified that Phillips did not offer him money to receive the packages. Jessie denied coordinating a deal with Phillips to receive money for accepting package deliveries.

Smith urged Rule 29 motions at the end of the government's case-in-chief and again after the defense rested.  The court denied both motions, and the jury fond her guilty of all three counts. After trial, Smith filed the instant Rule 29 motion seeking acquittal on Count 1, conspiracy to import methylone.  Smith argues that the evidence as to this count was insufficient.  Smith contends that there is no evidence that she knew of the agreement to import methylone or that she willfully entered into the agreement because there was no evidence how and by whom the methylone as brought into the United States from China, or that the person responsible for these acts was a member of the alleged conspiracy.  Smith argues that, even if Phillips' testimony regarding paying her and her husband to receive packages of methylone is taken as true, there is nothing in Phillips' testimony that

4

is evidence of her knowledge that the package would be imported from China.  Further, Smith argues that the court should recognize that Phillips is not a credible witness and the jury should not have relied on his testimony over her own and that of her husband.

The government contends that Smith is arguing for impermissible credibility determinations and that she overlooks her own May 30, 2013, statement in which she said that Phillips offered her and her husband money to accept packages.  The government also argues that, under the law of conspiracy, it was not necessary for Smith to know the details of the unlawful enterprise or the exact number or identity of the other co-conspirators.  All that is required is that she knowingly participated in the conspiracy's larger objective in some fashion.  The government argues that it proved that Smith and the other testifying defendants knew Phillips and voluntarily participated in the scheme to accept the methylone mailed from China by providing address to which the parcels were delivered.  Further, the government argues that Smith ignores the court's acceptance of two co-defendants' guilty pleas on Count 1 that were based on the same facts adduced at her trial, and that it would be inconsistent for the court to overturn her conviction on that count based on the same evidence.

## ANALYSIS

Rule 29 of the Federal Rules of Criminal Procedure governs motions for judgment of acquittal.  "Rule 29 . . . tests only the sufficiency of the evidence introduced at trial to support the crime charged." United States v. Hope, 487 F.3d 224, 225 (5th Cir. 2007).  Rule 29(a) provides in relevant part: "[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. Pro. 29(a).

Relief under Rule 29 is based on the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, which forbids conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." Jackson v. Virginia, 99 S.Ct. 2781, 2787 (1979) (quotation and citations omitted).  In ruling on such a motion, the court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but rather "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 2789 (quotations and citations omitted). The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." United States v. Dean, 59 F.3d 1479, 1484 (5th Cir. 1995) (citations omitted).  All evidence, both direct and circumstantial, reasonable inferences drawn from the evidence and all credibility choices are viewed in the light most favorable to the verdict. Id. (quotations and citations omitted).  "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." United States v. Mitchell, 484 F.3d 762, 768 (5th Cir. 2007) (internal quotations and citation omitted).  However, the court must ensure that the verdict is not based on "mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." United States v. Moreland, 665 F.3d 137, 149 (5th Cir. 2011) (quotations and citations omitted).

The verdict must be upheld "if the fact finder was presented with sufficient evidence to support the verdict reached[.]" United States v. Lucio, 428 F.3d 519, 522 (5th Cir.2005).  However, a conviction must be reversed "if the evidence construed in favor of the verdict gives equal or nearly

6

equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged."

Dean, 59 F.3d at 1484 (quotations and citations omitted).

Whether the evidence was sufficient to convict is determined by referring to the substantive elements of the offense charged. Moreland, 665 F.3d at 149 (citing Jackson, 99 S.Ct. at 2792 n. 16). At Smith's trial, the court instructed the jury that in order to find Smith guilty of Count 1, conspiracy to import methylone, the government had to prove beyond a reasonable doubt:

> *First*: That two or more persons, directly or indirectly, reached an agreement to import a controlled substance;
>
> *Second*: That the defendant knew of the unlawful purpose of the agreement;
>
> *Third*: That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and,
>
> *Fourth*: That the overall scope of the conspiracy involved at least 500 grams of methylone.[3]
>
> One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If the defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.
>
> The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

---

[3] There is no dispute for the purpose of this motion that the package contained at least 500 grams of methylone.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

A defendant may be properly found guilty of a narcotics conspiracy, even absent knowledge of the exact details of the conspiracy or the exact identities of all the co-conspirators, so long as [s]he knowingly participates in the larger conspiratorial objectives.

The court further instructed that the jury could find that the object of the plan between the defendant and others was to import methylone if the government established beyond a reasonable doubt each of the following elements;

*First*: That one of the conspirators brought methylone into the United States from a place outside the United States;

*Second*: That one of the conspirators knew the substance he/she was bringing into the United States was a controlled substance;

*Third*: That one of the conspirators knew that the substance would enter the United States; and

*Fourth*: That the quantity of the substance was at least 500 grams.

The government must prove beyond a reasonable doubt that the conspirator knew [s]he possessed a controlled substance, but need not prove that the conspirator knew what particular controlled substance was involved.

Smith argues that the government failed to prove that she knew about the agreement to import methylone because there was no evidence of how and by whom the Methylone was brought into the United States from China, or that the person responsible for these acts was a member of the

alleged conspiracy. She argues that, for all she knew, the packages could have been coming from across town.

Considering the elements of the crime of importing a controlled substance and the evidence presented, it was reasonable for the jury to find that the object of the alleged plan was to import methylone from China. Phillips testified that an unindicted co-conspirator ordered the methylone from China for delivery in the United States. It is reasonable to infer that this person knew that methylone is a controlled substance considering the elaborate plan for delivery that required multiple addresses. Thus, it was reasonable for the jury to find that the government proved that the objective of the conspiracy was to import methylone.

As to the elements of conspiracy to import methylone, Phillips' testimony established the first element, an agreement to import a controlled substance. Phillips explained that he would provide addresses to an individual referred to as "Mr. Big 1," and that "Mr. Big 1" would let him know when packages were going to arrive and give him the money to pay the people that provided the addresses. Phillips also testified that he told Smith that the packages she would receive contained methylone and that she joined in the agreement willfully when he promised to pay her for receiving the packages. Although there was no testimony that Smith knew that the packages originated in China or who placed and paid for the orders, it is not necessary that she had such knowledge for her to be found guilty of conspiracy to import methylone. The jury was instructed that a defendant may be found guilty of a narcotics conspiracy, even absent knowledge of the exact details of the conspiracy or the exact identities of all the co-conspirators, if she knowingly participates in the larger conspiratorial objectives, in this case importing methylone. Phillips' testimony that Smith and her husband agreed to accept packages of methylone in exchange for money established that Smith knowingly participated in the larger conspiratorial objective by

providing an address for delivery.  Smith questions the jury's reliance on Phillips' testimony when she and her husband both contradicted it.  However, credibility determinations are within the jury's discretion, and the evidence and credibility determinations must be viewed in the light most favorable to the verdict.  Therefore, there was sufficient evidence to support the guilty verdict on Count 1, and Smith's Rule 29 motion is DENIED.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Yolanda Smith's Rule 29 Motion for a Judgment of Acquittal as to Count 1 (Doc. #289) is **DENIED**.

New Orleans, Louisiana, this  23rd  day of June, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**