### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                      **NO:  13-198**

**YOLANDA SMITH**                               **SECTION: "S" (5)**

### ORDER AND REASONS

  **IT IS HEREBY ORDERED** that Yolanda Smith's Motion for a New Trial (Doc. #423) is **DENIED**.

### BACKGROUND

  This matter is before the court on a Motion for New Trial filed by defendant, Yolanda Smith. On January 22, 2015, a jury found Yolanda guilt as charged in a three-count Superseding Indictment.[1] Specifically, Yolanda was convicted of: conspiracy to import methylone in violation of 21 U.S.C. § 963 (Count 1); conspiracy to possess with intent to distribute methylone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), all in violation of 21 U.S.C. § 846 (Count 2); and, possession of methylone with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Yolanda argues that she is entitled to a new trial under Rule 33(b)(1) of the Federal Rules of Criminal Procedure because the prosecution's key witness against her, Alvin Phillips, gave contradictory testimony in a related criminal trial.

  In May 2013, Isaac Novoa, a Customs and Border Protection ("CBP") officer working at the San Francisco International Airport intercepted four packages from China bound for the New Orleans, Louisiana area. Upon inspection, CBP officers discovered that the packages all contained methylone, a Schedule I controlled substance. Novoa sent the packages via United States Postal

---

[1] Yolanda's trial was conducted before Judge Helen G. Berrigan. On January 6, 2016, this matter was temporarily realloted to Judge Mary Ann Vial Lemmon due to Judge Berrigan's leave of absence.

Service ("USPS") to Homeland Security Investigations ("HSI") in New Orleans for controlled deliveries.

On May 6, 2013, law enforcement officers made controlled deliveries of three of the packages one each to Alvin Phillips, Wykeshia Gray and Eric Johnson and his wife, Tyrnicka Hawkins.  All four of them were arrested.   Johnson and Gray both testified at Yolanda's trial that they did not know Yolanda.  Johnson testified that he and Hawkins were recruited by Phillips to receive packages at their address in exchange for money and/or drugs, that Phillips did not tell him that the packages contained cancer medicine, and he knew something illegal was in the packages because nobody would pay a person to receive something legal in the mail. Gray testified that Johnson brought her in by asking her to receive packages of cell phones for payment.  She testified that she did not believe that the packages contained cell phones, and by the time she received the second package, she knew that the packages contained methylone.

On May 30, 2013, law enforcement officers made a controlled delivery of the fourth package to the Smith's residence.  The package was addressed to Alan Phillips[2] at the Smith's residence and clearly had Chinese characters on it.  Yolanda signed for the package using the name Patrice Phillips.  Law enforcement officers observed Yolanda place the package, which was concealed in a silver gift bag, in her shed.  When the officers executed the search warrant Yolanda, told them that some white guy came into her back yard and put a package in the shed.  Yolanda was arrested.  After she was read the <u>Miranda</u> warning and signed a waiver or rights, she told law enforcement officers

---

[2] "Alan Phillips" was an alias that "Alvin Phillips" was using in connection with the packages.

that Phillips had offered her and her husband $250 to $500 per package to receive packages at their house, and that the packages contained cancer medicine.

At Yolanda's trial, Phillips testified that Yolanda and her husband, Jessie, knew that he had cancer, but that he had beaten it.  Phillips also testified that in December 2012 he lent the Smiths $200 to help pay their electric bill.  Around the same time, the Smiths moved to Waggaman, Louisiana, and Jessie asked Phillips if he know anybody who was hiring in construction work. Phillips asked two contractors, and they said that they may be hiring after Mardi Gras.  Phillips told Jessie and Yolanda that there was no work, but Phillips needed addresses to have packages of methylone delivered and if the Smiths agreed to let Phillips use their address, they would receive $500 per month, "molly" pills, or half money and half pills.  Phillips testified that this conversation occurred in the Smith's kitchen, with both Yolanda and Jessie present, and he made it clear that the packages would contain methylone.  Phillips testified that the Smiths agreed to let him use their address to have packages delivered and he had no doubt that they knew the packages contained methylone. Phillips also testified that he never ordered or paid for the drugs from China, but rather he provided addresses for the people who were doing those things, and he would bring them the packages and bring the money to the people who allowed their addresses to be used.

Yolanda testified in her own defense.  She testified that she knew Phillips had cancer, but did not know that he had beaten it.  Yolanda also testified that her husband told her that Phillips wanted to use their address to get his cancer medicine.  She did not find it strange because Phillips told her husband that someone was stealing the medicine.  Yolanda testified that there was no discussion of Phillips paying them to receive the packages.

3

Yolanda testified that on May 30, 2013, she signed for the package using the name Patrice Phillips because she thought she "couldn't get his medicine if [she] signed [her] own name" "without being part of his family."  Yolanda testified that she did not know that the package contained methylone.  She said that she put it in the shed so that her children would not find it and mistake it for candy.  Yolanda denied telling the law enforcement officers that a white man put a package in her shed.  She also testified that the law enforcement officers gave her the information about Phillips' paying people to receive packages, and that is why she included that information in her May 30, 2013, statement.

Jessie testified that in February 2013, while at a bar, Phillips asked him if he would receive Phillips' cancer medicine at his house because someone was stealing it when it was delivered.  Jessie did this favor for Phillips because Phillips paid his electric bill.  Jessie testified that Phillips did not offer him money to receive the packages. Jessie denied coordinating a deal with Phillips to receive money for accepting package deliveries.

Yolanda urged Rule 29 motions at the end of the government's case-in-chief, and again after the defense rested.  The court denied both motions, and the jury found her guilty of all three counts.[3]

On February 29, 2016, a jury trail commenced against Jessie, who was charged in Counts 1 and 2 of the Superseding Indictment with conspiracy to import methylone and conspiracy to possess with the intent to distribute methylone, respectively.  The jury returned a verdict of not guilty on both counts.  Phillips testified at Jessie's trial that he was surprised that Yolanda was indicted because all of his drug transactions were with Jessie, not Yolanda.  Specifically, Phillips

---

[3]   After trial, Yolanda filed a Rule 29 motion seeking acquittal on Count 1, conspiracy to import methylone, which the court denied.

testified that he told Jessie that he needed addresses to send the packages to, and that Jessie was involved when Phillips picked up a package and delivered the money. Phillips testified at least four times that he dealt only with Jessie, not Yolanda, regarding the drugs.

Yolanda filed the instant Rule 33(b)(1) motion for a new trial, arguing that Phillips' testimony at Jessie's trial contradicted the testimony that he gave at her trial in that Phillips' testimony at Jessie's trial exonerates her. Yolanda argues that this evidence was not previously available and that it is likely that a jury would find her not guilty with the benefit of such evidence. Alternatively, Yolanda moves for the production of all notes, Reports of Investigation, or other memoranda related to Phillips' meetings with the prosecution team to determine whether the prosecution knew or should have known of Phillips' false testimony. She contends this is necessary to determine if the alternative standard for a new trial based on false testimony applies.

The government contends that the testimony at Jessie's trial focused on his involvement because Yolanda had already been convicted and the government was attempting to prove the charges against Jessie. The government argues the inconsistencies in Phillips' testimony that Yolanda points out are "mild impeaching material," and would not support a new trial for Yolanda because the government relied on other evidence to obtain her conviction. The government contends that the following evidence supports Yolanda's conviction: Phillips' consistent testimony in both trials; Yolanda's actions during and after the controlled delivery; Yolanda's lies to law enforcement during the initial encounter; and, Yolanda's recorded statement. The government points out that, when talking about the drug deliveries to the Smith residence, Phillips often uses the words "they" and "them" indicating that both Yolanda and Jessie were involved. Also, Phillips testified that the drug "dealing" and "transactions" were between him and Jessie meaning that he would give Jessie

the money and Jessie would give him the drugs.  Phillips did not testify that Yolanda was unaware or uninvolved in the conspiracy.  Indeed, Phillips testified at both trials that Yolanda and Jessie were together when they agreed to participate in the conspiracy, and in her recorded statement Yolanda said that Phillips offered her and Jessie $250 to $500 for each package received.

The government argues that the main evidence against Yolanda came from the agents' testimony regarding Yolanda's suspicious actions when she received the controlled delivery.  Specifically, she signed with a false name, hid the package in her backyard shed and lied to the agents about a white man putting the package in her shed.  She also gave a detailed recorded statement in which she incriminated herself and Jessie, which statement corroborated Phillips' testimony.

Finally, the government argues that Yolanda is not entitled to any discovery because she has not proved that Phillips's testimony was false, and that is no basis for the request in any procedural rule or jurisprudence.

## ANALYSIS

Rule 33 of the Federal Rules of Criminal Procedure permits the court, upon the defendant's motion, "to vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A motion for new trial based "on newly discovery evidence must be filed within 3 years after the verdict[.]" Id. at 33(b)(1).  Motions for new trial are generally disfavored, and committed to the district court's discretion. United States v. Mahmood, - - - F.3d - - -, 2016 WL 1533847 (5th Cir. 4/14/2016) (citing United States v. Eghobor, 812 F.3d 352, 363 (5th Cir. 2015); United States v. MMR Corp., 954 F.2d 1040, 1047 (5th Cir. 1992)).  To prevail on a Rule 33 motion

for new trial based on newly discovered evidence, the defendant must prove each of the following

Berry factors:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

Eghobor, 812 F.3d at 363 (quoting United States v. McRae, 795 F.3d 471, 478 (5th Cir. 2015)).

"The motion must be denied if the defendant fails to demonstrate any one factor." United States v.

Piazza, 647 F.3d 559, 565 (5th Cir. 2013) (citing United States v. Jaramillo, 42 F.3d 920, 924-25

(5th Cir. 1995)).  The United States Court of Appeals for the Fifth Circuit "has recognized that if

the government used false testimony that it knew or should have known was false, then the standard

applied for newly discovered evidence is slightly more lenient." United States v. Wall, 389 F.3d 457,

473 (5th Cir. 2004).  "[T]his standard requires a finding that the testimony in question was 'actually

false[,]'" and "incorporates all of the elements of a motion for new trial based on newly discovered

evidence, except the fifth" one. Id.  "A new trial based on false testimony is justified if there is *any*

*reasonable likelihood* that the false testimony affected the judgment of the jury." Id.

The government argues that Phillips' testimony at Jessie's trial is not newly discovered

evidence, but rather newly created evidence.  Even with this distinction, it is new evidence that was

unknown at the time of Yolanda's trial, and there was no lack of due diligence by Yolanda.  Thus,

the first two factors are satisfied.

As to the third factor, Yolanda argues that Phillips' testimony at Jessie's trial is not merely

cumulative or impeaching, but "goes to the heart of Yolanda Smith's knowledge and participation."

Yolanda contends that Phillips' testimony at Jessie's trial contradicts the testimony he gave at

Yolanda's trial because at Jessie's trial he repeatedly said that he dealt only with Jessie regarding the drugs.

The government contends that Phillips's testimony at Jessie's trial is merely cumulative or impeaching, because it does not exonerate Yolanda. The government argues that at Jessie's trial, when Phillips testified that he "dealt" only with Jessie regarding the drugs, that he meant he traded money for drugs with Jessie, not Yolanda, but that Phillips testified at both trials that Yolanda knew about the scheme and participated by receiving the package as supported by the testimony of the agents and Yolanda's statement to law enforcement officials.

"Evidence that 'only casts doubt on the veracity' of a witness's testimony and 'demonstrates a bias on the part of [that witness]' is 'mere impeachment evidence' that is insufficient to entitle a defendant to a new trial." Id. at 363-64 (quoting United States v. Holmes, 406 F.3d 337, 360 (5th Cir. 2005)).  The slight inconsistences in Phillips' testimony at Jessie's trail from the testimony he gave at Yolanda's trial is merely impeaching.  Phillips did testified at Jessie's trial that he dealt only with Jessie regarding the drugs, whereas at Yolanda's trial he testified that dealt with both of them because they were rarely apart.  However, Phillips testified consistently at both trials that Yolanda was present when he proposed the plan of using the Smith's address to deliver the packages.  This testimony is corroborated by Yolanda's post-arrest statement to law enforcement officers where she said that Phillips offered her and her husband money to receive packages.  Because Yolanda has not proved the third Berry factor, her motion for new trial is DENIED.[4]

---

[4] Yolanda's request for discovery goes to the fifth Berry factor.  It need not be addressed because Yolanda did not satisfy the third Berry factor.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Yolanda Smith's Motion for a New Trial (Doc. #423) is

**DENIED**.


New Orleans, Louisiana, this  23rd  day of June, 2016.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**